[Cite as *State v. Harris*, 2012-Ohio-10.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96566**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL HARRIS

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-534091

**BEFORE:** Jones, P.J., S. Gallagher, J., and Keough, J.

**RELEASED AND JOURNALIZED:** January 5, 2012

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio 44067


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Margaret A. Troia
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


LARRY A. JONES, P.J.:

{¶ 1} Defendant-appellant, Michael Harris, appeals his conviction for burglary. We affirm.

{¶ 2} In 2010, Harris was charged with two counts of burglary and one count of theft. One count of burglary was accompanied by a notice of prior conviction. Harris was charged along with Quentin Willis, who pled guilty to one count of burglary and was sentenced to one year in prison.

{¶ 3} Harris's matter proceeded to a jury trial, at which the following pertinent

evidence was presented.

{¶ 4} Mary Thomas, an analyst at the Cleveland Clinic, was at work on September 23, 2009, when she received a phone call from her sister. Her sister, who lived next door to Thomas, informed Thomas that her condominium had been broken into. Thomas went home and saw that her living room window was smashed. She went inside, called police, and found that her two televisions, a computer, printer, and DVR player had been taken. She also found that a media player, camera, jewelry, and coins were missing. She testified that the value of the stolen items was over $5000.

{¶ 5} The responding police officer, Herman Dotson, observed a broken living room window and a screen lying on the ground. Detective John Riedthaler of the Cleveland Police Crime Scene Unit noted the same. The detective processed the scene and recovered a total of ten latent prints. The detective located the prints on the interior pane of the broken window, on the ground outside of the condominium, inside the home, and on the exterior of the window. He did not photograph the scene.

{¶ 6} Felicia Simington of the Crime Scene Unit testified as a fingerprint expert. Simington analyzed the prints and determined that three of the ten prints belonged to Harris. The prints that belonged to Harris were located on the interior and the exterior of the window. The other prints belonged to Quentin Willis.

{¶ 7} Willis testified that he pled guilty to burglary and agreed to testify truthfully against Harris. He detailed his past criminal history. He testified that on September 23, 2009, he was at home when he received a phone call from Harris. Harris told him

that someone named "D" lived by Thomas and knew there was money in her home. Harris asked Willis if he wanted to break into the house and Willis agreed.

{¶ 8} Harris picked Willis up, D was sitting in the back seat. D directed Willis and Harris to the Thomas home. Willis testified that Harris pulled past Thomas's house and let D and Willis out of the car. Harris then parked the car. The three males went up to Thomas's living room window. D gave Willis a screwdriver. Willis broke the window and started pulling out pieces of glass. Harris helped Willis pull out the glass while D served as a lookout.

{¶ 9} Willis testified that Harris's hand went through the window to pull out glass. Harris then left to get the car, but did not return. Willis crawled through the window and unlocked the front door for D. Willis and D carried the items out of the home. Willis later sold the items.

{¶ 10} Later that day, Willis saw Harris and asked him why he did not return to help them take the items out of the house. Willis testified that Harris "wanted some of the things," but he did not give Harris anything "[be]cause he wasn't there when we — when I took the things — when I got D and * * * took the things from the house." Willis reiterated that Harris was present when he broke the window and helped him remove pieces of glass.

{¶ 11} The jury convicted Harris of the two burglary charges, but acquitted him of theft. The trial court merged the two counts of burglary and sentenced him to eight years in prison.

{¶ 12} Harris appeals, raising the following assignment of error for our review:

{¶ 13} "I. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of burglary."

{¶ 14} In his sole assignment of error, Harris contends that his convictions are not supported by sufficient evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, Cuyahoga App. No. 92266, 2009-Ohio-3598, ¶12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 942, paragraph two of the syllabus.

{¶ 15} Harris was found guilty of burglary, in violation of R.C. 2911.12(A), which provides that "[n]o person, by force, stealth, or deception, shall do any of the following:

"(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;

"(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;

" * * *."

{¶ 16} The state proceeded under a theory of complicity, pursuant to R.C. 2923.02, which provides that "[n]o person, acting with the kind of culpability required for the

commission of an offense, shall * * * (1) Solicit or procure another to commit the offense; (2) Aid or abet another in committing the offense; (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code; (4) Cause an innocent or irresponsible person to commit the offense."

{¶ 17} Harris argues that there is insufficient evidence that he committed burglary. We disagree.

{¶ 18} Willis testified Harris initially contacted him to tell him about Thomas's condo and ask Willis if he wanted to participate in the burglary. Harris picked him up and drove Willis and D to Thomas's house. Harris dropped the two men off near the condo, then parked his car and returned to the condo. After Willis broke a window in Thomas's living room, Harris assisted him by helping taking pieces of glass out of the window. Willis testified that Harris put his hand *through* the window when taking out pieces of the glass and Harris's fingerprint was found on the interior of the window. Harris then went to get the car, but did not return.

{¶ 19} This court has held that "[i]n proving the element of unlawful entry in the criminal prosecution of [a] defendant upon a charge of burglary, proof of the *insertion of any part of defendant's body is sufficient to constitute an entrance."* (Emphasis added.) *State v. Rudolph*, Cuyahoga App. No. 92085, 2009-Ohio-5818, ¶18, citing *State v. Cuthbertson* (June 1, 1976), Hamilton App. No. C-75362. Thus, Harris's act of putting his hand through Thomas's window constituted the trespass necessary for the burglary.

{¶ 20} Harris claims that the state failed to present evidence that Harris took a

"substantial step" toward the commission of the burglary because he voluntarily abandoned his efforts to participate in the crime. Harris cites the attempt statute, R.C. 2923.02, to support his argument that he did not attempt to commit the burglary. But Harris was not charged with attempt; thus, Harris's argument that he abandoned the crime under the meaning of R.C. 2923.02(D) has no merit.[1]

{¶ 21} During trial Harris set forth the affirmative defense of termination pursuant to R.C. 2923.03(E), which provides that it "is an affirmative defense to a charge under this section that, prior to the commission of or attempt to commit the offense, the actor terminated his complicity, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." To prove termination, Harris would have to show that he manifested a complete and voluntary renunciation of his criminal purpose.

{¶ 22} When questioned by the state if Harris ever told Willis that he was no longer going to participate in the burglary, Willis responded, "No." Again, Willis testified that Harris helped him remove some of the glass from the window and told Willis he was going to get the car and would be right back. Willis testified that Harris's car was parked "about 10 minutes" from the condominium, but he only remained at Thomas's condo for five to seven minutes after Harris left. When Willis saw Harris later that day, Harris told him that he wanted some of the stolen property, but Willis refused. In light of the above, there is insufficient evidence that Harris terminated his

---

[1]R.C. 2923.02(D) provides for an affirmative defense for an attempt if "the actor abandoned the actor's effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of the actor's criminal purpose." Id.

participation in the burglary.

**{¶ 23}** The state set forth evidence that Harris planned the burglary, drove the parties to the scene, and actively participated in the burglary. Therefore, the state presented sufficient evidence as to each of the elements of the burglary offenses.

**{¶ 24}** The sole assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR